## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **SALAH K.,**<br><br>    **Plaintiff,**<br><br>    **v.**<br><br>**KILOLO KIJAKAZI, Acting Commissioner of Social Security,**<br><br>    **Defendant.** | Civ. No. 21-11082 (KM)<br><br>**OPINION** |

### KEVIN MCNULTY, U.S.D.J.:

*Pro se* plaintiff Salah K. brings this action to review a final decision of the Commissioner of Social Security ("Commissioner") denying his claims for Title II Disability Insurance Benefits ("DIB") and Title XVI Supplemental Security Income ("SSI"). He argues that the ALJ's determination that he was not disabled as defined by Title II of the Social Security Act between his alleged onset date and his remote date last insured was not supported by substantial evidence. For the reasons stated below, the Commissioner's decision is **AFFIRMED**.

### I.    BACKGROUND[1]

Salah K. has applied for DIB pursuant to Sections 216(i) and 223(d) of the Social Security Act ("SSA"). The time frame of the application is unusual.

The applicant claimed a period of disability beginning on January 6, 1992, based on physical impairment resulting from degenerative disc disease of the cervical spine. (R. 23.) His date last insured is December 31, 1997. The

---

[1]    Citations to the record are abbreviated as follows:

   "DE" = docket entry

   "R. _" = Administrative Record (DE 13)

   "Pl. Br." = Salah K.'s moving brief (DE 18)

   "Def. Br." = SSA Commissioner's opposition brief (DE 19)

disability seemingly had its origins in an automobile accident in 1992, after which the applicant lived in Egypt for some 20 years. He applied for disability benefits on July 1, 2015, after his return to the United States. His application was denied initially and upon reconsideration. (R. 121, 128.) On April 15, 2020, he had a hearing before an Administrative Law Judge ("ALJ") to review his application de novo.[2] (R. 62-85.) ALJ Richard West heard testimony from the plaintiff, who was represented by counsel at the time.[3] On September 1, 2020, ALJ West issued a decision finding that prior to the 1997 date last insured, Salah K. had the residual functional capacity to perform the full range of sedentary work as defined in 20 CFR 404.1567(a). (R. 24-27.) The Appeals Council denied Plaintiff's request for review on March 16, 2021, rendering the ALJ's decision a final decision of the Commissioner. (R. 1–7.) This appeal followed.

## II.   DECISION FOR REVIEW

### A. The Five-Step Process and this Court's Standard of Review

To qualify for Title II DIB benefits, a claimant must meet the insured status requirements of 42 U.S.C. § 423. To qualify, a claimant must show that she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted (or can be expected to last) for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(c), 1382(a).

Under the authority of the SSA, the Social Security Administration (the "Administration") has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. This Court's review necessarily incorporates a determination of whether the

---

[2]   Salah K.'s hearing was conducted via telephone due to the extraordinary circumstances presented by the COVID-19 pandemic. The claimant affirmed his consent to proceed by telephone on the record at the hearing. (R. 65-66.)

[3]   Salah K. was represented by counsel prior to and at the administrative hearing. (R. 304-22.) However, he has opted to proceed *pro se* in bringing this appeal.

ALJ properly followed the five-step process, which is prescribed by regulation. The steps may be briefly summarized as follows:

**Step 1:** Determine whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. 20 CFR §§ 404.1520(b), 416.920(b). If not, move to step two.

**Step 2:** Determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, move to step three.

**Step 3:** Determine whether the severe impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 CFR Pt. 404, Subpt. P, App. 1, Pt. A. If so, the claimant is automatically eligible to receive disability benefits (and the analysis ends); if not, move to step four. *Id.* §§ 404.1520(d), 416.920(d).

**RFC and Step 4:** Determine the claimant's "residual functional capacity" ("RFC"), meaning "the most [the claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). *Caraballo v. Comm'r of Soc. Sec.*, 2015 WL 457301, at *1 (D.N.J. Feb. 3, 2015). Decide whether, based on his RFC, the claimant can return to her prior occupation. 20 C.F.R. § 1520(a) (4)(iv); *Id.* §§ 404.1520(e)–(f), 416.920(e)–(f). If not, move to step five.

**Step 5:** At this point, the burden shifts to the Administration to demonstrate that the claimant, considering his age, education, work experience, and RFC, is capable of performing jobs that exist in significant numbers in the national economy. 20 CFR §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91–92 (3d Cir. 2007). If so, benefits will be denied; if not, they will be awarded.

On appeal, the Court conducts a plenary review of the legal issues. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). Factual

findings are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* When substantial evidence exists to support the ALJ's factual findings, this Court must abide by the ALJ's determinations. *See id.* (citing 42 U.S.C. § 405(g)).

This Court may, under 42 U.S.C. § 405(g), affirm, modify, or reverse the Commissioner's decision, or it may remand the matter to the Commissioner for a rehearing. *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984); *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 865–66 (3d Cir. 2007). Outright reversal with an award of benefits is appropriate only when a fully developed administrative record contains substantial evidence that the claimant is disabled and entitled to benefits. *Podedworny,* 745 F.2d at 221–222; *Morales v. Apfel,* 225 F.3d 310, 320 (3d Cir. 2000).

Remand is proper if the record is incomplete, or if there is a lack of substantial evidence to support a definitive finding on one or more steps of the five-step inquiry. *See Podedworny*, 745 F.2d at 221–22. Remand is also proper if the ALJ's decision lacks adequate reasoning or support for its conclusions, or if it contains illogical or contradictory findings. *See Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119–20 (3d Cir. 2000); *Leech v. Barnhart*, 111 F. App'x 652, 658 (3d Cir. 2004) ("We will not accept the ALJ's conclusion that Leech was not disabled during the relevant period, where his decision contains significant contradictions and is therefore unreliable."). It is also proper to remand where the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted).

**B. The ALJ's Decision**

ALJ West undertook the necessary step-by-step inquiry.

### Step 1

The ALJ concluded William R. had not engaged in substantial gainful activity from January 6, 1992, the alleged onset date. (R. 23.)

### Step 2

The ALJ found that through the date last insured, December 31, 1997, Salah K. had the severe impairment of degenerative disc disease. (R. 23 (citing 20 CFR 404.1520(c).)

### Step 3

The ALJ determined that Salah K. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 23.) In particular, the ALJ's discussion of the evidence focused on Listing 1.04 (disorders of the spine).[4] Though it does not affect my analysis, I note that

---

[4]     **1.04 *Disorders of the spine*** (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

OR

B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;

OR

C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness,

since the time of the ALJ's decision in this case, the Social Security Administration passed rules revising its criteria for examining spinal disorders, replacing Listing 1.04 with two new Listings, 1.15 (Disorders of the skeletal spine resulting in compromise of a nerve root(s)) and 1.16 (Lumbar spinal stenosis resulting in compromise of the cauda equina).

### RFC and Step 4

Next, ALJ West defined the claimant's RFC:

5.      After careful consideration of the entire record, the undersigned finds that prior to December 31, 1997, the date last insured, the claimant had the residual functional capacity to perform the full range of sedentary work as defined in 20 CFR 404.1567(a).

(R. 24.) The ALJ analyzed at length the evidence supporting that RFC determination. (R. 24-27.)

Based on the RFC, the ALJ concluded at Step 4 that Salah K. is unable to perform any past relevant work, specifically his previous work as a night manager for a club. (R. 27.) As required, the ALJ considered Salah K.'s position both as he actually performed it and as it is generally performed.

### Step 5

Considering Salah K.'s age, education, work experience, and RFC, the ALJ concluded at Step 5 that there are jobs available that Salah K. can perform. (R. 28.) The ALJ noted that because Salah K. had an RFC for the full range of sedentary work, considering the claimant's vocational profile prior to the date last insured, a finding of "not disabled" was directed by Medical-Vocational Rule 201.28. (R. 28.)

## III.   DISCUSSION

In his appeal, Salah K. asserts that the ALJ's disability determination was flawed in five ways. I address each of his arguments in turn.

---

and resulting in inability to ambulate effectively, as defined in [Listing] 1.00B2b.

*First*, Salah K. claims that he was never given "any opportunity to present evidence." (Pl. Br. at 1.) However, Salah K. was provided ample opportunity to present evidence. Indeed, the administrative record contains 22 medical records submitted by Salah K.'s attorney at the time. (R. 323-432 (Exs. 1F-22F).) Notably, during his April 2020 hearing, Salah K. informed the ALJ that he possessed additional documentation he wished to submit for consideration in connection with him claim for benefits. (R. 65.) The ALJ agreed to accommodate Salah K. and stated that he would hold the record open for 30 days, and would extend that period of time if the claimant needed additional time to obtain and submit the evidence. (R. 65-66.) In fact, the ALJ granted several extensions (R. 197-199) and noted in his August 2020 decision that he held the record open for more than 100 days after the administrative hearing to provide Salah K. time to submit additional evidence pertaining to the relevant period (R. 20-21).[5]

To the extent Salah K. contends that he was not granted an opportunity to submit evidence during his initial administrative appeal of the ALJ's decision, that argument has no merit either. During the pendency of his application to the Appeals Council, Salah K. again requested more time to submit additional evidence. (R. 14.) On November 27, 2020, the Appeals Council granted this request. (R. 12). On February 9, 2021, the Appeals Council noted that it received a 4-page fax from Salah K.'s counsel, but the last three pages of the fax were illegible. (R. 8). In light of this challenge, the Appeals Council granted Salah K. yet more time to submit a legible copy of the documents he had attempted to submit. (R. 8). On March 16, 2021, when the Appeals Council denied Salah K.'s request for review of the ALJ's decision, it explicitly noted that it reviewed Salah K.'s additional evidence, but the evidence was either not new, not material, or did not show a reasonable probability that

---

[5]     The ALJ noted that the only records submitted by Salah K. following the hearing post-dated the relevant time period. (R. 20-21.)

it would change the outcome of the decision (R. 2).[6] Given the generous amount of time both the ALJ and the Appeals Council afforded Salah K. to submit more evidence beyond the 22 medical reports that were already in the record, and their noted consideration of that additional evidence, Salah K.'s insistence that he was not provided "any opportunity to present evidence" (Pl. Br. at 1) is simply unfounded.

*Second*, Salah K. contends that the ALJ "didn't take into consideration any of the medical reports," and appears to put particular emphasis on the 2019 report of Dr. Alexander Hoffman, who purportedly confirmed the validity of Salah K.'s medical records from Egypt stating that the claimant had had Parkinson's disease since 1994 or 1995, in addition to a slipped disc since 1992. (Pl. Br. at 1-2.) The underlying decision, however, demonstrates that the ALJ thoroughly considered the evidence pertaining to the relevant time period, including reports by several different medical providers, including Dr. Hoffman.

---

[6]    In denying Salah K.'s request for review, the Appeals Council explicitly acknowledged the additional evidence Salah K. submitted and explained why it did not counsel in favor of reviewing the ALJ's decision, let alone reversing it. In a section titled "Additional Evidence," the Appeals Council stated:

> You submitted evidence from Chiropractic Pain Management dated September 23, 2019 and a MRI study report of the lumbar spine dated July 17, 1992 (2 pages). This evidence is not new because it is a copy of Exhibits 2F and 8F. We did not exhibit this evidence.
>
> You also submitted a copy of email correspondence dated December 13, 2017 to December 17, 2017 (5 pages). This evidence is not material because it is not relevant to your claim for disability. We did not exhibit this evidence.
>
> You also submitted evidence from Ala Arafa, M.D dated July 10, 2010 to August 25, 2018 (4 pages); Abdel Rahman, M.D dated February 6, 1995 to January 7, 2005 (3 pages); and Chiropractic Pain Management dated June 15, 2020 (1 page). We find this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not exhibit this evidence.

(R. 2.)

ALJ West began his review of the medical record with a detailed discussion of treatment Salah K. received from Dr. Y. Kazan, a chiropractor. (R. 25.) He then took up treatment records of Dr. Imad Baghal, who provided an opinion on when Salah K. could return to work and the lifting restrictions to which he should adhere when he does. (R. 25.) The ALJ also considered the report of Dr. Earl Zeitlin, who performed a neurological evaluation on Salah K. (R. 25-26.) ALJ West concluded his review of the evidence from the relevant time period with a discussion of Salah K.'s physical therapy records from October Medical Center for Physical Therapy, starting in 1992. (R. 26.)

As for the report of Dr. Alexander Hoffman—the evidence Salah K. contends the ALJ failed to consider—I find that ALJ West did review and discuss this report, but afforded it little weight because its limited findings were based on an examination that took place in February 2019, more than 20 years after the relevant period:

> On February 1, 2019, the claimant attended a consultative examination with Alexander Hoffman, M.D. (see 7F). In his summary of the examination, Dr. Hoffman noted history and evidence of Parkinson's disease, the use of a cane for balance and support, and hypertension that appeared untreated at that time (7F/2). This opinion is afforded little weight. Dr. Hoffman provided only a limited functional assessment for specific work-related activities and based his findings on an examination in February 2019, more than 20 years after expiration of the DLI of December 31, 1997. Therefore, while this opinion is not inconsistent with the residual functional capacity limiting the claimant to sedentary work, it was given little weight in making the findings herein.

(R. 27.) It is clear from the underlying decision that ALJ West carefully considered the medical reports in the record—even those that were generated long after the relevant time period—and his findings with respect to Salah K.'s RFC are supported by substantial evidence.

*Third*, Salah K. appears to argue that a report from Nyack Hospital was somehow "concealed." (Pl Br. at 1-2.) He appears to be claiming that there is a

report, not reviewed by the ALJ, that indicates he was hospitalized in February 1993. (Pl. Br. at 2.) It is unclear what report Salah K. is referring to. He does not provide a copy, and he provides no additional information as to the relevance of his purported 1993 hospitalization. Without more, this argument does not provide any basis for disrupting the ALJ's well-reasoned decision.

*Fourth*, Salah K. claims that he submitted medical records to the American Consulate in Cairo, Egypt regarding certain health conditions that have prevented him from working, namely a slipped disc and Parkinson's disease. (Pl. Br. at 2.) He provides no further information regarding what these reports might entail. To be sure, there are the challenges associated with producing years-old documentation that is stored in another country. Salah K.'s representations that these records document his Parkinson's disease and slipped disc conditions are conclusory and unaccompanied by any explanation as to what added value these reports would provide. He also cites no evidence of reasonable efforts on his part to procure this evidence in the years that have passed since he first applied for benefits or appealed from their denial. At any rate, the ALJ's decision explicitly addressed the conditions Salah K. claims are documented in these reports. (R. 24, 27.) Accordingly, I am not persuaded that this allegedly missing evidence is material.

*Finally*, Salah K. contends that the ALJ did not consider medical reports that were generated in Egypt, which, according to Salah K., amounts to discrimination on the basis of national origin. (Pl. Br. at 2.) Relatedly, Salah K. suggests that he was also a victim of religious discrimination because of his name. (*Id.*) Notwithstanding the fact that the claimant's discrimination argument is baseless and unsubstantiated, it is plainly belied by the record. The Appeals Council explicitly noted that it took into account certain evidence Salah K. belatedly filed (R. 2), which appears to have included Egyptian medical records (R. 46-47, 57-61). As a result, I do not credit Salah K.'s discrimination claim at all.

\*   \*   \*

10

In sum, I find that ALJ West conducted a thorough review of the evidence in the record. I further find that both he and the Appeals Council provided the claimant ample opportunity to submit any additional evidence he saw fit to present. Overall, the ALJ's decision is supported by substantial evidence and therefore will be upheld.

## IV.    CONCLUSION

For the reasons set forth above, the Commissioner's decision is **AFFIRMED**. A separate order will issue.

Dated: June 28, 2023

/s/ Kevin McNulty

_____

**Hon. Kevin McNulty**
**United States District Judge**